IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF OHIO, WESTERN DIVISION

| | |
|---|---|
| COMPUTEREASE SOFTWARE, INC. 6460 Harrison Avenue, Suite #200 Cincinnati, Ohio 45211<br><br>    Plaintiff,<br><br>vs.<br><br>HEMISPHERE CORPORATION c/o Scott Lyon, Registered Agent 2815 East 3300 South Salt Lake City, Utah 84109<br><br>    Defendant.<br><hr>HEMISPHERE CORPORATION c/o Scott Lyon, Registered Agent 2815 East 3300 South Salt Lake City, Utah 84109<br><br>    Counterclaim Plaintiff,<br><br>vs.<br><br>COMPUTEREASE SOFTWARE, INC. 6460 Harrison Avenue, Suite #200 Cincinnati, Ohio 45211<br><br>    Counterclaim Defendant. | Civil No. 1:06CV247<br><br>Judge Beckwith<br><br><br><br>**HEMISPHERE CORPORATION'S ANSWER TO COMPLAINT, AND COUNTERCLAIM** |

Hemisphere Corporation now appears and responds to the allegations in the Complaint and asserts its defenses. In response to the specific allegations in the Complaint, Hemisphere Corporation admits, denies and alleges as follows:

1. Admitted.

2. The identity of Hemisphere Corporation is admitted. Denied that Hemisphere Corporation is no longer under a dealer contract with ComputerEase.

3. Admitted.

4. Admitted.

5. Admitted.

6. Denied for lack of knowledge or information.

7. Admitted.

8. Admitted that the Dealer Agreement was executed, , however the document speaks for itself and is not limited to the selective quotations chosen by ComputerEase for the balance of allegations in paragraph 8. Denied that the Dealer Agreement applicable during calendar year 2005 was signed by Mr. Lyon on behalf of Hemisphere Corporation on December 31, 2004. It was back dated to December 31, 2004, but not actually executed until mid-April 2005. This is the reason that the signature of Bob Mattlin on behalf of ComputerEase Software, is not dated until April 29, 2005.

9. Denied. ComputerEase's notice was not sent until December 1, 2005, and it was not sent by certified mail as required by the **NOTICE** paragraph on page 8 of the Dealer Agreement. Furthermore, the notification letter gave Hemisphere Corporation only until "close of business on December 16, 2005" to execute and return the original. (Copies of the notice letter and its mailing envelope are attached at Exhibit A.)

10. Admitted that the new Dealer Agreement offered for commencement on January 1, 2006, contained a new fixed price mechanism. However, denied that Hemisphere Corporation objected to that fixed price arrangement or that all ComputerEase Dealers agreed to the new pricing arrangement.

11. Denied for lack of knowledge or information. In addition, of the fifteen other ComputerEase Dealers, Hemisphere Corporation was the only one denied the opportunity to negotiate about the continuing scope of territory and other adjustments under the new fixed price arrangement.

12. The first sentence of paragraph 12 is admitted. Admitted that a letter was sent on December 5, 2005, by ComputerEase insisting that Hemisphere Corporation become subject to the new fixed price arrangement. However, Hemisphere Corporation was singled out and treated unfairly in that other Dealers were able to negotiate over the continued scope of their territories and were given confirmation about conversion to the fixed price arrangement in September and October 2005 in time to make appropriate adjustments in sales staff and other operational considerations. Further, ComputerEase sent its December 5, 2005 letter knowing that Hemisphere Corporation's principal, Scott Lyon, was committed to be out of the United States on a family vacation from December 17, 2005 through the end of the year, thus giving him inadequate time to accommodate Hemisphere Corporation's staffing and continued operations to the new fixed price arrangement.

13. Denied. Hemisphere Corporation simply wanted some dialogue with ComputerEase Software about terms and conditions in the new Dealer Agreement. Hemisphere Corporation also wanted the same opportunity as other Dealers had received to prepare for the fixed price arrangement by hiring new employees, reducing territory, and making other operational changes. Further, Hemisphere Corporation was not given until December 31, 2005 to execute the new Dealer Agreement, but was rather foreshortened to December 16, 2005, as explained in response to paragraph 9, above.

14. Admitted that Hemisphere Corporation signed the new Dealer Agreement on February 17, 2006 and also submitted its fixed price payments for January and February 2006 on that day. The new Dealer Agreement was post-dated back to December 31, 2005, as had been done for the prior Dealer Agreement, as explained in response to paragraph 8, above.

15. Admitted that ComputerEase did not execute the new Dealer Agreement signed by Hemisphere Corporation on February 17, 2006, but denied that ComputerEase Software rejected the contract renewal. In all ways, both prior to February 17, 2006 and up to April 27, 2006 when it filed the above-styled action, ComputerEase Software interacted with Hemisphere Corporation as a continuing Dealer and made no objection or challenge to Hemisphere Corporation's continued operation as a ComputerEase Dealer.

16. Admitted that Hemisphere Corporation mailed the checks for the fixed price charges during January and February 2006, as alleged, and admitted that ComputerEase has recently returned those checks. Otherwise, until the filing of this action on April 27, 2006

and the return of the fixed price checks, ComputerEase Software conducted business as usual, processed new orders from customers of Hemisphere Corporation, and communicated in a manner consistent with business-as-usual.

17. Admitted.

18. The first sentence of paragraph 18 is admitted, as far as it goes. However, both under the Dealer Agreement and related commitments by ComputerEase, a Dealer such as Hemisphere Corporation has continuing rights to support its customers and service them with sales of upgrades, add-ons, and new products. The second sentence of paragraph 18 is denied.

19. With regard to the allegations of paragraph 19, the Dealer Agreement speaks for itself. Because the Dealer Agreement effective during calendar year 2005 was not effectively terminated by ComputerEase, the automatic continuation terms under the paragraph titled **CONTRACT** on page 1 goes into effect and Hemisphere Corporation is entitled to continue operating under the 2005 Dealer Agreement.

20. Admitted that portions of the Dealer Agreement read as quoted selectively by ComputerEase.

21. Denied. ComputerEase continued to provide Hemisphere Corporation with new product and technical support because Hemisphere Corporation was continuing on as a licensed Dealer under the Dealer Agreement effective for the calendar year 2005. The remaining allegations in paragraph 21 are denied as revisionist and self-serving.

22. Admitted that ComputerEase support of Hemisphere Corporation's End Users after December 31, 2005 is occurring under the Dealer Agreement effective for the calendar year 2005 which has continued in effect according to its terms.

23. Denied.  Hemisphere Corporation tendered the fixed price payments to ComputerEase, but ComputerEase subsequently rejected those payments and properly reverted to pricing under the Dealer Agreement effective for the calendar year 2005.

24. Denied.  Hemisphere Corporation has paid the full amount of revised charges referenced in paragraph 24, but has done so under protest for the inappropriate withholding of discounts and special pricing under the Dealer Agreement effective for calendar year 2005.

25. (a) Denied.

    (1) Denied.

    (2) Denied.

    (3) Denied.

26. (a) Denied.

    (b) Denied.

27. Denied.

### **FIRST AFFIRMATIVE DEFENSE**

The Complaint fails to state a cause of action upon which relief can be granted.

**SECOND AFFIRMATIVE DEFENSE**

The Plaintiff never properly terminated the Dealer Agreement effective during the calendar year 2005, and therefore by its terms, that Dealer Agreement continues for an additional year without change.

**THIRD AFFIRMATIVE DEFENSE**

Because of its delay, non-communication, and continuation of the ordinary scope and course of dealing, all of which Hemisphere Corporation reasonably relied on, ComputerEase waived and should be estopped from challenging continuation of the Dealer Agreement effective during calendar year 2005 or implementation of the new Dealer Agreement effective for calendar years 2006 and 2007.

**FOURTH AFFIRMATIVE DEFENSE**

ComputerEase Software initiated this action in retaliation for the unwillingness of Hemisphere Management, a Utah limited liability company which is a related entity to Hemisphere Corporation, to modify or relinquish its rights as a ComputerEase Software Distributor. As such, ComputerEase has unclean hands and is not entitled to the equitable relief which it seeks in its Complaint.

**FIFTH AFFIRMATIVE DEFENSE**

The short delay from December 31, 2005 to February 17, 2006 when the principal of Hemisphere Corporation, Scott Lyon, executed the new Dealer Agreement effective for the calendar years 2006 and 2007, was not a material delay or a breach of any significant covenant or condition of the new Dealer Agreement.  As such, the new Dealer Agreement should be recognized as being the terms of contract which are in force and effect between ComputerEase and Hemisphere Corporation.

## **COUNTERCLAIM**

Hemisphere Corporation now counterclaims against ComputerEase Software.  For its Counterclaim, Hemisphere Corporation alleges and prays as follows:

1. The parties are as alleged and admitted in the Complaint and the Answer.

2. Hemisphere Corporation has a significant present and continuing economic interest in the revenues and benefits of its dealership of ComputerEase Software products.

3. ComputerEase has suffered no operational detriment or economic injury as a result of the circumstances relating to either continuation of the Dealer Agreement effective for calendar year 2005 or entry into the new Dealer Agreement effective for the years 2006 and 2007.

4. Through its duplicitous and unwarranted actions in attempting to terminate Hemisphere Corporation's dealership, ComputerEase has breached the Dealer

Agreement and caused Hemisphere Corporation serious economic damage of at least $1,500,000, or such greater amount as shall be proven at trial.

5. The manner and circumstances of ComputerEase's efforts to terminate the dealership of Hemisphere Corporation constitute bad faith, and as such are a breach of the covenant of good faith and fair dealing implied in all contracts.

6. ComputerEase Software's efforts to terminate the dealership of Hemisphere Corporation are being conducted vindictively and for the purpose of obtaining collateral leverage in related negotiations between ComputerEase and Hemisphere Management, a sister entity of Hemisphere Corporation.

7. This conduct by ComputerEase is wrongful in its own right, and it is being pursued for the improper purpose of obtaining unwarranted advantage in the collateral but completely independent distributorship of Hemisphere Management.

8. Since the filing of its Complaint on April 27, 2006 which declared the dealership of Hemisphere Corporation terminated, Hemisphere Corporation has been diligently pursuing sale of its customer base. This effort to sell is being done pursuant to terms of the Dealer Agreement effective for the calendar year 2005. (See terms on pages 6 and 7.)

9. The effort to sell is being done by Hemisphere Corporation in protest, but also out of a practical realization that the vindictive and retaliatory conduct of ComputerEase Software has and will make it impossible for Hemisphere Corporation to operate effectively as a Dealer, regardless of the outcome of this litigation.

10. Since Hemisphere Corporation's commencement of efforts to sell its customer base, ComputerEase has interfered and frustrated that process by demanding the right to audit Hemisphere Corporation's books and records, demanding or prohibiting certain terms and conditions of agreement between Hemisphere Corporation and proposed purchasers, and by interfering and disrupting normal communications between Hemisphere Corporation and the other ComputerEase Dealers who are the logical purchasers of Hemisphere Corporation's customer base.

11. Under the Dealer Agreement, ComputerEase has only the right to approve of the buyer of the Hemisphere Corporation customer base.  ComputerEase does not have the right to dictate terms, interfere with the transaction, or control price and administration of the sale.

## **PRAYER FOR RELIEF**

Based upon the foregoing answers and defenses to the Complaint, together with the allegations and claims in the Counterclaim, Hemisphere Corporation prays for relief as follows:

28. That ComputerEase Software take nothing by way of its Complaint, with judgment of no cause of action to be entered against it on its equitable and legal claims;

29. Under the Counterclaim for breach of the Dealer Agreement and for breach of the implied covenant of good faith and fair dealing, for damages or judgment in the

amount of $1,500,000 or such greater amount as is proven at trial in favor of Hemisphere Corporation and against ComputerEase Software;

30. Under the Counterclaim for wrongful conduct and improper purpose, for punitive damages in the amount of $1,500,000 or such other amount as the Court deems appropriate and necessary to punish ComputerEase Software for its malicious and retaliatory conduct and as a fair warning to ComputerEase Software against treating other Dealers in a similar manner;

11

31. Under the Dealer Agreement and equitable allegations of the Counterclaim, for judgment to be entered in favor of Hemisphere Corporation determining that the only interest ComputerEase has in Hemisphere Corporation's sale of its customer base is to approve the buyer, which is must do based upon reasonable and objective standards, and for injunctive relief making ComputerEase Software cease and desist from continuing to interfere in any way with Hemisphere Corporation's marketing and sale of its customer base; and

32. For such other and further relief as the Court deems just and equitable under the circumstances, including recovery of all of its costs, expenses, and reasonable attorney's fees, whether justified by contract, by statute, or as an element of direct or consequential damages or as a measure of punitive damages.

/s/ John C. Scott_____
JOHN C. SCOTT, #0029518
Attorney for Defendants
FAULKNER & TEPE, LLP
2200 Fourth & Vine Tower
Cincinnati, Ohio 45202
(513) 421-7500

**CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing with the Clerk of Courts using the CM/ECF system which will send notification of such filing to Richard G. Meyer and Angela M. Gates, 207 Thomas More Parkway, Crestview Hills, KY 41017, this 22nd day of May, 2006.

/s/ John C. Scott
JOHN C. SCOTT