IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF OHIO, WESTERN DIVISION

| | | |
|---|---|---|
| COMPUTEREASE SOFTWARE, INC. | : | Civil No. 1:06-cv-247 |
| Plaintiff, | : | Judge Beckwith |
| vs. | : | SECOND AMENDED COMPLAINT |
| HEMISPHERE CORPORATION | : | |
| and | : | |
| HEMISPHERE MANAGEMENT, LLC | : | |
| Defendants. | : | |

Comes now the Plaintiff, ComputerEase Software, Inc., and for its Second Amended Complaint against the Defendants, Hemisphere Corporation and Hemisphere Management, LLC, states as follows:

1.     Plaintiff, ComputerEase Software, Inc., (hereinafter "CE") incorporates by reference and reiterates as if fully stated herein each and every material averment of the original Complaint and the Amended and Supplemental Complaint and incorporates the Exhibits to the original Complaint and the Amended and Supplemental Complaint as if attached hereto.

FACTUAL BACKGROUND AND JURISDICTION

2.     On February 10, 1997, CE and Hemisphere Corporation, the predecessor to Hemisphere Management, LLC, entered into a Distribution Agreement, which is Exhibit A to the Amended and Supplemental Complaint.  Hemisphere Management, LLC is the

successor in interest to Hemisphere Corporation and will be referenced herein as "HLC."

3.      Pursuant to terms of the aforementioned Agreement, HLC was to be a master distributor for CE and CE's products in certain territories west of the Mississippi River.

4.      Pursuant to the terms of the aforementioned Agreement, HLC was to perform certain obligations including, but not limited to, the following:

        a.  Provide adequate sales and technical support for dealers;

        b.  Acquaint and familiarize itself with new CE products;

        c.  Get leads to dealers;

        d.  Handle dealer calls;

        e.  Maintain staff necessary to support dealers;

        f.  Maintain mutually agreed upon quotas for dealers;

        g.  Assist with the development of sales materials;

        h.  Bring on new dealers;

        i.  Develop an investment program to develop new dealers;

        j.  Hire a full-time dealer manager;

        k.  Make regular visits with dealers; and

        l.  Reinvest money assisting dealerships.

5.      The aforesaid Agreement was negotiated and executed in Cincinnati, Hamilton County, Ohio.  Since the inception of the Agreement, HLC's owner, Scott Lyon, traveled to Cincinnati, Ohio on a regular basis in connection with performance of the duties required by the Agreement.  In regard to its duties under the Agreement, CE performed all of its contractual obligations in Cincinnati, Ohio.

## COUNT I

6.    CE adopts and incorporates herein all allegations as stated above.

7.    HLC breached the aforementioned Distribution Agreement as follows:

   a.  By failing to provide adequate sales and technical support for dealers;

   b.  By taking inadequate measure to acquaint and familiarize itself with new CE products;

   c.  By taking inadequate measures to get leads to dealers;

   d.  By refusing and failing to handle dealer calls;

   e.  By taking inadequate measures to maintain staff necessary to support dealers;

   f.  By failing to achieve or maintain mutually agreed upon quotas for dealers;

   g.  By taking inadequate measures to assist with the development of sales materials;

   h.  By failing to bring on new dealers; (for example, since the inception of the agreement, HLC has added only one new dealer).

   i.  By failing to develop an investment program to develop new dealers;

   j.  By failing to hire a full-time dealer manager responsible for growing the dealer base;

   k.  By failing to insure that dealers maintain quotas;

   l.  By failing to make regular visits with dealers; and

   m. By failing to reinvest money assisting dealerships.

8.    From the inception of the contract, HLC has failed to provide the required and necessary technical and other support to dealers and end users.  As a result, CE has been forced to handle the majority of end user and dealer support issues.

9.     As a direct and proximate result of HLC's failure to provide technical support pursuant to the contract, CE had to hire additional staff and realign current staff to handle support, at a cost of approximately $143,333 per annum to CE.  This failure on the part of HLC has continued unabated for an approximate six-year period, with resulting damages totaling approximately $860,000.

10.    As a direct and proximate result of HLC's breaches of contract, described hereinabove, CE was required to hire additional staff to handle dealer calls outside of technical support, but which were still within the support obligations of HLC per the contract, including handling dealer and customer concerns for billing issues, customer problems, problem resolution, product update notices, and informing dealers about bugs, enhancements, releases, etc., collection calls to dealers, coordinating all aspects of dealer committee issues as they pertain to the West territory, monitoring maintenance renewals, tracking customer maintenance, conducting bookkeeping and administration tasks involved in running the dealer master distributor business, negotiating with dealers and customers in all disputes and working with customers and dealers as to placement of disgruntled customers to other dealers, and maintaining accurate records of financial assistance given to dealers.

11.    CE's cost of hiring the aforementioned staff was $17,500 per annum. These failures on the part of HLC has also continued unabated for approximately six years, resulting in damages to CE of approximately $105,000.

12.    As a direct and proximate result of HLC's breaches of contract, described hereinabove, which included a failure to hire a full-time employee solely responsible for developing new dealers and the dealer base in the West, CE had to hire additional staff and realign its current staff to address this deficiency, at an approximate cost to CE of

$100,000 per annum, for the same six-year period, totaling $600,000 in damages to CE.

## COUNT II

13.     CE adopts and incorporates herein all allegations as stated above.

14.     This is an action for declaratory judgment brought pursuant to 28 U.S.C. §2201 and Fed. R. Civ. Proc. 57.

15.     The aforementioned conduct of HLC in breaching the Distribution Agreement constitutes multiple material breaches of the Contract, thereby entitling CE to terminate the Contract.

16.     CE prays for a declaration that the within Distribution Agreement is terminated as of December 31, 2005, that HLC is no longer a distributor of CE's products, and that no further commissions or payments established under the contract are due and owing pursuant to the aforementioned Agreement from CE to HLC.

## COUNT III

17.     CE adopts and incorporates herein all allegations as stated above.

18.     HLC has unjustly benefited and been unjustly enriched by receipt of commissions and payments from CE, without providing the requisite services required of it pursuant to the Agreement at issue.  HLC has received approximately $2.2 million under the Master Distributor Agreement since the inception of the relationship yet the majority of HLC's responsibilities and obligations were not performed or were performed inadequately.

19.     It is inequitable for HLC to retain the benefit of monies paid by CE over the past several years pursuant to the aforementioned Agreement.

20.    CE is entitled to relief based upon the equitable remedy of unjust enrichment, in an amount to be proven at trial.

WHEREFORE, by way of this Second Amended Complaint, Defendant, ComputerEase Software, Inc., prays for a judicial declaration that the Distribution Agreement referenced hereinabove is terminated and demands judgment against Defendant, Hemisphere Management, LLC, in an amount in excess of $75,000, plus interest; for reasonable attorney fees, for court costs incurred herein, and for such additional relief as the Court may deem appropriate.

/s/Richard G. Meyer
Richard G. Meyer (pro hac vice)
Angela M. Gates (#0077122)
Deters, Benzinger & LaVelle, P.S.C.
207 Thomas More Parkway
Crestview Hills, Kentucky 41017
(859) 341-1881
rmeyer@dbllaw.com
*Counsel for Plaintiff,*
*ComputerEase Software, Inc.*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true copy of the foregoing was delivered via CM/ECF on the 11th day of January, 2007 to John C. Scott and Russell Fericks.

/s/Richard G. Meyer

107902.1