**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | | |
|---|---|---|
| COMPUTEREASE SOFTWARE, INC. | : | |
| Plaintiff | : | CASE NO. 1:06-CV-247 |
| -vs- | : | MAGISTRATE JUDGE TIMOTHY S. BLACK |
| HEMISPHERE CORPORATION, et al., and HEMISPHERE MANAGEMENT, LLC | : : | **MEMORANDUM IN OPPOSITION TO COMPUTEREASE'S MOTION FOR PARTIAL SUMMARY JUDGMENT – DEALER AGREEMENT** |
| Defendants | : | |

\* \* \* \* \* \* \*

This is the memorandum of Hemisphere in opposition to the Plaintiff's Motion for Partial Summary Judgment – Dealer ("MSJ-Dealer"). This Memorandum incorporates and is supported by a separate Affidavit of Scott Lyon dated October 11, 2007 and filed concurrently herewith.

Plaintiff's MSJ-Dealer is an attempt to reargue issues raised by the parties in what were essentially cross-Motions for Injunctive Relief filed on July 10, 2006. (Documents 19 and 21) These cross-Motions were supported by substantial contradictory affidavits of the parties' principals – John Meibers for Plaintiff (Document 20), and Scott Lyon for Hemisphere (Documents 22 and 29). Plaintiff's return to the injunction issues now seeks to garner advantages which it did not achieve in July 2006 and which are not supported by the text of the resulting documents and pleadings or by the controlling case law. The MSJ-Dealer is unmeritorious for a number of independently sufficient reasons which include:

  A. It is not supported by a valid, admissible affidavit;

  B. It ignores substantial disputes as to material facts;

  C. It is illogical and seeks an outcome from waiver based on a mischaracterization of Hemisphere's claims and remedies;

  D. It seeks a waiver effect from the Limited Settlement Agreement (the "LSA", copy provided at Tab 1) which is contrary to the LSA's terms and to the circumstances of the LSA's execution;

  E. It improperly argues that Hemisphere has made a knowing and intentional waiver of claims and damages;

  F. It ignores the absence of consideration for the massive waiver effect which it urges for the LSA; and

  G. It urges an outcome contrary to the explicit reservation of claims and causes of action in the July 31, 2006 Order Regarding Injunctive Relief (Document 29, copy at Tab 2) <u>and</u> the August 23, 2006 Agreed Order Partially Dismissing As Settled.  (Document 31, copy at Tab 3).

For all of the foregoing reasons, as more fully explained and supported below, the MSJ-Dealer should be denied in its entirety.

## **POINT I: FACTUAL AND LEGAL DEFICIENCIES IN THE MSJ-DEALER**

**A.     The MSJ-Dealer Is Not Supported By A Valid, Admissible Affidavit.**

Rule 56(e), F. R. Civ. P., requires that affidavits which support a motion for summary judgment "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Plaintiff's MSJ-Dealer is heavily fact-dependent and relies extensively on the July 24, 2007 Affidavit of Robert Mattlin.

On Tuesday, October 23, 2007, Hemisphere filed a Motion to Strike various affidavits of Robert Mattlin, including the one dated July 24, 2007. As explained in great detail in the Memorandum supporting that Motion to Strike, critical parts of Mr. Mattlin's Affidavit are not based upon his personal knowledge, and other passages consist of either improper argument of Plaintiff's case or unsubstantiated statements of law. For example, in paragraph 13 of his affidavit, Mr. Mattlin opines that Plaintiff's MSJ-Dealer has been brought:

> "because Hemisphere relinquished its exclusive territory rights in a
> Limited Settlement Agreement which CSI and Hemisphere signed
> on August 4, 2006 . . . . Based on this Agreement, Hemisphere has
> no rights connected to its former exclusive sales territory other
> than the right to transfer its customers in this territory to
> Microvisions II."

This statement of pure advocacy and legal conjecture cannot properly support a motion for summary judgment.

3

This type of excess in Mr. Mattlin's Affidavit is legion. For instance, in paragraph 21, Mr. Mattlin sets himself up as principal witness, chief prosecutor, judge and jury with the following prounouncement:

> Hemisphere's excuse [– that it could not accept Plaintiff's June 23, 2006 offer to enter into a new eighteen-month dealer agreement because on May 31, 2006 it had committed to sell its customer base to Microvisions II by entering into the Asset Purchase Agreement –] is not valid. Both the 2005 Dealer Agreement under which the sale of Microvisions II was occurring and the APA itself required CSI's approval, which was not given until the end of July. As of June 23, 2006, therefore, Hemisphere did not have a binding contract with Microvisions II. Secondly as part of the option to allow HC to assume its dealership for eighteen months, CSI made it part of the offer that it would hold Hemisphere harmless from any claims asserted by Microvisions II (which was owned by CSI's very first dealer dating back to 1992).

This is bald conjecture and bold advocacy, pure and simple, and it is improper under the standard of Rule 56(e). In addition, it has nothing to do with the linchpin of Plaintiff's MSJ-Dealer, which is that: "HC's Dealer Agreement counterclaim . . . is barred by the parties' Limited Settlement Agreement . . . ." (*See* Plaintiff's Memorandum at page 2.) In the absence of proper support which is relevant to the issues upon which the MSJ-Dealer turns, the Motion should be denied.

**B.     The MSJ-Dealer Ignores Substantial Disputes As To Material Facts.**

The real circumstances under which Hemisphere's dealership was terminated are substantially different than what Mr. Mattlin suggests in his July 24, 2007 Affidavit. That reality

is summarized in the October 11, 2007 Affidavit of Scott Lyon (¶¶ 8 and 11) which incorporates and builds upon his detailed Affidavit from June 30, 2006 (Document 22) and his equally thorough Supplementary Affidavit of July 27, 2006 (Document 29).  Both of those earlier Affidavits were previously submitted to the Court in the context of the cross-Motions for Injunction (Documents 19 and 21) during July of 2006.

Without reiterating all the detail in Mr. Lyon's affidavits, the basic circumstance is that on April 27, 2006 when Plaintiff declared the Hemisphere dealership retroactively terminated as of December 31, 2005, Hemisphere was put to a very difficult Hobson's choice of either:  (1) fighting for a continuing dealership interest by seeking equitable relief; or (2) mitigating damages by selling its Customer Base, and then suing for the resulting loss of enterprise value which resulted from Plaintiff's improper termination of the 2005 Dealer Agreement and Plaintiff's unjustified rejection of the 2006 Dealer Agreement.

Hemisphere chose the latter course when it filed its Counterclaim on May 30, 2006.  (See Counterclaim at pp. 8-12, Document 9.)  Hemisphere made this choice because the effect of the dealership termination and forced sale of its Customer Base made it impossible for Hemisphere to continue to operate as a dealer.  (See, *e.g.*:  ¶ 9 of Counterclaim [Document 9]; ¶¶ 36 to 47 of S. Lyon 6/30/06 Affidavit [Document 22]; ¶¶ 16, 24, 25 and 26 of S. Lyon 7/27/06 Affidavit [Document 28]; and ¶¶ 8 and 11 of S. Lyon 10/11/07 Affidavit.)

Under the wildly divergent versions of the material facts extent here, there can be no summary judgment.  Plaintiff's MSJ-Dealer should therefore be denied.

5

**C.     The MSJ-Dealer Seeks An Outcome From Waiver Based On A Mischaracterization of Hemisphere's Claims And Remedies.**

Plaintiff's argument – that the only way for Hemisphere to have damages from loss of future operations is to have the continuing ability to conduct those operations into the future – simply makes no sense. It is precisely because of Plaintiff's wrongful termination of Hemisphere's dealer operations that Hemisphere has such a substantial Counterclaim for breach of contract. Plaintiff's argument to the contrary is a rhetorical non-sequitur: that because Hemisphere relinquished any future claim to dealer rights in its exclusive territory, that Hemisphere also waived its claim for monetary damages.

The only equitable relief Hemisphere sought in its Counterclaim was the Court's protection from Plaintiff interfering with the sale of Hemisphere's Customer Base. (See: ¶¶ 10, 11 and 31, of Counterclaim, Document 9.) The battle to prevent Plaintiff's interference was fought out in the cross-Motions for Injunctive Relief filed on July 10, 2006. The resulting Order Regarding Injunctive Relief entered on July 31, 2006 (Document 29, copy at Tab 2) essentially grants the relief requested by Hemisphere that sale of the "Customer Base to Microvisions II shall proceed forthwith." The Order effectively denies the injunctive relief requested by Plaintiff, which was to force an involuntary sale of Hemisphere's Customer Base through an auction process conducted by Plaintiff.

6

The Court should not be mislead by Plaintiff's mischaracterization of Hemisphere's positions into replowing old ground.  The MSJ-Dealer is a poorly constructed invitation to do just that, and it should therefore be summarily denied.

**D.     The MSJ-Dealer Seeks A Waiver Effect From The LSA Which Is Contrary To The LSA's Terms And The Circumstances Of Its Execution.**

It is well settled that "a written contract will be presumed to be a complete "integration" of the parties' agreement.  This presumption is strongest for a written agreement which contains a merger or integration clause expressly indicating that the agreement constitutes the parties' complete and final understanding regarding its subject matter.  *Fontback v. Compuserve*, 138 Ohio App. 3d 801, 808, 742 NE 2d 674, 678-679 (Ohio App. 2000).  The parol evidence rule works in conjunction with this principle of contract law to exclude extrinsic evidence to expand or change the meaning of an integrated contract.  *Id.*

Here, the LSA (Tab 1) has a standard integration clause.  Paragraph 7 of the LSA reads as follows:

> This Agreement, which includes all Recitals and Exhibits attached hereto, represents the entire Agreement between the Parties with respect to the specific subjects addressed herein, and there are no other understandings between the Parties, with respect to those subjects, other than what is set forth herein.

Nowhere does the LSA say that Hemisphere is waiving its claim for damages from Plaintiff's improper termination of the dealership. The LSA is an integrated agreement which expresses the full intention and understanding of the parties[1].

However, because of a very troubling tendency of Plaintiff and its counsel to ignore known facts, established legal standards, and obvious courses of dealing, some review of the history by which the LSA, and the related Order Regarding Injunctive Relief and Agreed Order Partially Dismissing As Settled, were negotiated and drafted is necessary, not as an argument about parol evidence, but as an illustration of the trend of excesses by Plaintiff and its counsel. Concerns regarding this issue have already been introduced into the litigation through Hemisphere's Motion to Strike Affidavits of Robert D. Mattlin in Support of Motion for Summary Judgment which was filed on October 23, 2007.

Hemisphere and its counsel do not make these charges lightly. They are well-aware of the broad allowances of the adversary system. However, they cannot participate quietly in a factual and legal charade as though it were proper and acceptable. The circumstance is making this litigation unacceptably expensive and protracted, and it pushes the boundaries of acceptable advocacy.

---

[1] By its title, it is a "Limited" Settlement Agreement. In the third WHEREAS paragraph, the parties acknowledge that the LSA is explicitly entered into in contemplation of an "Agreed Order." The form of the Agreed Order was approved by counsel for the parties on August 4, 2006 but not entered by the Court until August 23, 2006 (Document 31, Tab 3). That Agreed Order explicitly resolves only issues "relating to exclusive territory issues and continuing licensing interest of Hemisphere," but reserves by not affecting "the remaining claims of the parties under the December 31, 2004 Dealer Agreement or relating to the Distributor Agreement . . . ."

Here is the background explanation for the LSA and the related Orders: Attached at Tab 4 are a series of email communications between counsel for Hemisphere and Plaintiff during late July and early August 2006. These communications demonstrate very clearly that the LSA and the related Orders were never intended to effect a global resolution of all dealer issues, but rather a carefully drawn and narrow resolution of immediate, practical circumstances facing the Parties at that dynamic window of time. The first email from Plaintiff's counsel, John Kirk, dated July 28, 2006, invites discussion about resolution of "claims, causes of action, issues and defenses" following on the heels of the telephone conference conducted by the Court on July 28, 2006[2]. Attached to Kirk's email is a draft of a proposed Order Regarding Injunctive Relief which goes far beyond the issues raised and resolved in the cross-Motions for Injunctive Relief by suggesting that: "It is further ORDERED that the Dealer Agreement of January 1, 2005 between ComputerEase and Hemisphere Corporation is null and void as the parties agree that all outstanding issues under the Dealer Agreement have been resolved to the satisfaction of the parties."

       This was decidedly not true. So on that same Friday afternoon, July 28, 2006, Hemisphere's counsel, Russell Fericks, emailed back to Mr. Kirk that the scope of the draft order was "very problematic, and in fact impossible, to declare now that the 2005 Dealer Agreement is

---

[2]That telephone conference was held to consider the cross-Motions for Injunction. At the close of the telephone conference, sale of Hemisphere's Customer Base to Microvisions II was ordered. The Court's July 31, 2006 Order Regarding Injunctive Relief (Document 29, Tab 2) followed directly from that telephone conference.

'null and void' and that all 'outstanding issues . . . have been resolved . . .'." The Fericks' email goes on to suggest some very discrete steps which could be achieved by way of tradeoffs or "accommodations" between the parties. The next day, Saturday, July 29, 2006, Mr. Kirk responded to Mr. Fericks' reservations with another email and a revised draft of the Order Regarding Injunctive Relief. The revised draft removes the global language and inserts: "It is further ORDERED <u>that all other claims, causes of action, issues and defenses in this case are reserved for further adjudication.</u>" This revised and carefully limited text is essentially what the Court signed off on on July 31, 206 in its Order Regarding Injunctive Relief. (Document 29, Tab 2)

A few days later, on August 3, 2006, Mr. Fericks faxed back to Mr. Kirk a series of editorial revisions to what had been drafted as a very broad "Settlement Agreement." In his facsimile, Mr. Fericks also returned editorial changes to the draft of the "Agreed Order" referenced in the third WHEREAS paragraph of the draft Settlement Agreement. The Agreed Order then had a title of "AGREED Order PRTIALLY DISMISSING AS SETTLED (*sic*)." As is explicitly apparent from the editorial changes of Hemisphere's counsel, Hemisphere was only willing to enter into discrete, limited points of resolution.

The draft Settlement Agreement was revised in both title and text to be a "Limited Settlement Agreement." The editorial revisions excluded a statement that "the Parties relinquish any and all rights, claims, counterclaims, causes of action, issues, and defenses they may have under the Dealer Agreement" and struck the suggestion that "the Parties agree to cooperate in

executing an Agreed Order of Dismissal . . . dismissing with prejudice all claims and counterclaims filed by either Party relating to the Dealer Agreement . . . ."  Further edits to the draft of the Settlement Agreement incorporate explicitly the succinct and limited accommodations outlined in the Fericks' email of July 28, 2006.  Edits to the "AGREED Order (*sic*)" as it then stood made the text specific only to resolution of the "exclusive territory issues and continuing license interest of HC, as a selling dealer" and excluded any suggestion that the claims and counterclaims were resolved globally.

Plaintiff, through its counsel, agreed to all of these limiting editorial changes.  The LSA was executed by principals for both parties on August 4, 2006.  The Agreed Order Partially Dismissing As Settled was approved as to form on August 4, 2006.  It was entered by the Court on August 23, 2006.  (Document 31, Tab 3)

The expense and time invested in investigating and providing the foregoing narrative for the Court is unfortunate.  Plaintiff and its counsel are intimately familiar with the process by which the LSA and the Agreed Order reached their final form.  And yet, in the MSJ-Dealer, they argue for a global effect which contradicts the text of the documents and which is at blatant odds with the course of dealing through which those documents were drafted and finalized.  The MSJ-Dealer should be denied, not only because it is contrary to the integrated and explicit text of the LSA and the related Orders, but because it relies upon arguments which are so egregiously disingenuous.

E.  **The MSJ-Dealer Improperly Assumes That Hemisphere Has Made A Knowing And Intentional Waiver of Claims and Damages.**

It is well-established that a waiver is a "voluntary relinquishment of a known right, with the intent to do so with full knowledge of all the facts."  *Wheeling Corp. v. Columbus & Ohio River RR. Co.*, 147 Ohio App.3d 460, 477, 771 N.E.2d 263, 276, (Ohio App., 2001).

In *Wheeling Corp. v. Columbus & Ohio River RR. Co.*, the Court found that a bidder for operating rights on a publicly owned railway had not waived objections to violations of the Open Meetings Act by participating in a public meeting which constituted the very violation later claimed as reversible error on appeal.  The Court held that because there was no evidence that the appellant was aware of the violation at the time the meeting was occurring, no waiver could be found by implication.  *Id.*  Here, Hemisphere has explicitly reserved its claims and causes of action, and so no implied waiver can arise from a record and circumstances even less fertile than those involved in *Wheeling Corp. v. Columbus & Ohio River RR. Co.*

One requirement of an enforceable waiver is that:  "The party seeking to prove the waiver must do so by showing a clear, unequivocal, decisive act by the other party of such a purpose it acts as an estoppel on that party's part."  *Id.*  Here, Plaintiff has made no effort to show that Hemisphere intended through the LSA or the related Orders to waive its claims for $1.5 million dollars of damages arising out of Plaintiff's breach of contract.  In fact, as the narrative in Part D, above, shows, Hemisphere had exactly the opposite intention.  Hemisphere's resolve has consistently been to pursue its claim for monetary damages.  See:  ¶¶ 11 and 12 of

October 11, 2007 Affidavit of Scott Lyon filed in support of this Memorandum in Opposition. Therefore, the MSJ-Dealer should be denied.

**F. The MSJ-Dealer Ignores The Absence Of Consideration For The Massive Waiver Effect Which It Urges For The Limited Settlement Agreement.**

The law of waiver requires that "where the waiver is based upon an agreement, consideration is also necessary." *Parente, et al., v. Day, et al.*, 16 Ohio App.2d 35, 38, 1241 N.E.2d 280, 282 (Ohio App. 1968). Here, the consideration in the LSA is explicit, and the communications through which that consideration was negotiated (see Tab 4) are in full accord. In paragraph No. 1 of the LSA, Hemisphere relinquishes interest in exclusive sales territory back to Plaintiff. In paragraph No. 2, Hemisphere acknowledges that, having relinquished any future claim to an exclusive territory, Plaintiff has the right to "transfer, assign or sell the rights" to another party. In exchange, in paragraph No. 3, Plaintiff agreed to lock in existing price formulas for Hemisphere's purchaser, Microvisions II, throughout the duration of the Asset Purchase Agreement. And, in paragraph No. 4, Plaintiff agreed to provide Hemisphere with an "End User License Agreement, together with all updates for the ComputerEase accounting software" for the duration of the Asset Purchase Agreement.

The logic and equivalence of these mutually supporting accommodations track exactly the Fericks' email of July 28, 2006 (Tab 4). Nothing about this text in the LSA can be rationally read as the relinquishment of $1.5 million dollars of breach of contract damages from

claims which the Court had just ordered as being "reserved for further adjudication" (see: Order Regarding Injunctive Relief, Tab 2), and which the Court was just about to order as "not affecting the remaining claims of the parties under the December 31,2004 Dealer Agreement . . . ." (see: Agreed Order Partially Dismissing As Settled, Tab 3).

## G. The MSJ-Dealer Urges An Outcome Contrary To The Explicit Reservation Of Claims And Causes Of Action In Previous Orders of This Court.

Importantly, the Court's 7/31/06 Order Regarding Injunctive Relief (Document 29, Tab 2) specifically states that "all other claims, causes of action, issues and defenses in this case are reserved for further adjudication." This status of preserved claims was affirmed less than a month later on August 23, 2006 when the Court entered its Agreed Order Partially Dismissing as Settled. (Document 31, Tab 3) The Agreed Order acknowledges resolution of "claims and counterclaims . . . relating to the exclusive territory issues and continuing licensing interest of Hemisphere Corporation as a selling dealer . . . ." However, the Agreed Order expressly limits its effect to that narrow outcome and "does not affect the remaining claims of the parties under the December 31, 2004 Dealer Agreement or relating to the Distributor Agreement between ComputerEase Software, Inc. and Hemisphere Management, LLC."

Thus, at the end of August 2006, Hemisphere's claims for damages arising out of Plaintiff's improper termination of the 2005 Dealer Agreement and improper rejection of the 2006 Dealer Agreement were the essence of Hemisphere's Counterclaim. Hemisphere was not

14

pressing a claim for the right to operate into the future because after April 27, 2006 it no longer could. (See ¶ 17 of Lyon Affidavit [10/11/07].) Therefore, relinquishing the dealer territory back to Plaintiff through the LSA did not explicitly or by implication constitute a waiver of Hemisphere's damages claims, which were then estimated at $1.5 million dollars. (*Id.*; and see ¶ 29 of Counterclaim, Document 9)[3]. Under these circumstances, the MSJ-Dealer should be denied as irrelevant and contrary to explicit Orders of this Court.

## POINT II: IRRELEVANT/ERRANT ISSUES RAISED IN MSJ-DEALER

In its MSJ-Dealer, Plaintiff raises a number of issues which are extrinsic to the determinative issues discussed above. However, in order to avoid the appearance of implied consent or concession to these issues, they will be briefly addressed here.

Significant portions of Plaintiff's memorandum supporting its MSJ-Dealer and of the Affidavit of Robert Mattlin (7/24/07) are directed at how Hemisphere went about selling its Customer Base, whether it negotiated for the best possible value, and if any damages exceed sale proceeds. These issues are all preliminary and incidental at this stage. As shown in the numerous affidavit passages from Scott Lyon and the specific allegations in Hemisphere's Counterclaim, Hemisphere sold its Customer Base reluctantly as an exercise of mitigation after Plaintiff made it impossible for Hemisphere to continue in operations as a dealer. To the extent

---

[3] The estimate of damages from Plaintiff's breach of the dealership has now been included in an enterprise loss of $2,720, 777 comprised of the consolidated dealer and distributor operations of Hemisphere. See ¶ 14 of S. Lyon Affidavit of 10/11/07, and Brad Townsend expert report attached thereto at Tab 4.

that Hemisphere will receive payments roughly equivalent to $3,000 per customer, apparently Plaintiff is in complete agreement that the duty to mitigate has been fully satisfied.

However, Hemisphere had a lot more at stake in the going concern, enterprise value of its dealership. As shown with great precision by Hemisphere's economist, Brad Townsend, after deducting the present value of the stream of payments for the Customer Base, substantial damages remain. (See S. Lyon 10/11/07 Affidavit at ¶ 14, and Brad Townsend Expert Report attached thereto at Tab 4.) Plaintiff's surmises that Hemisphere could have done even better in its sale of its Customer Base had it negotiated further with other potential buyers is simply that – an unfounded surmise which is not supported by any admissible affidavit evidence, and not even suggested by the rudimentary exchange of terms reflected in Exhibits E, F, and G attached to the 6/24/07 Mattlin Affidavit.

Plaintiff's argument that there was no dealer contract in place after December 31, 2005 upon which Hemisphere can base claims for loss of enterprise value strikes at one of the most fundamental and hotly disputed material facts in this case. The Court need look no further than the "Relief Requested" portion of Plaintiff's original Complaint filed on April 27, 2006 (Document 1). There, in paragraph 25, Plaintiff requests a declaratory judgment that the Dealer Agreement effective during 2005 had been properly terminated, and a complimentary declaratory judgment that the Dealer Agreement effective beginning January 1, 2006 was never timely accepted. Hemisphere's Counterclaim seeks the polar opposite of these judicial determinations. The unmitigated portion of Hemisphere's dealer damages arise directly out of

Plaintiff's improper termination of the 2005 Dealer Agreement and its inexplicable refusal to recognize the 2006 Dealer Agreement.

Plaintiff argues that under either of the Dealer Agreements, the only remedy available to a dealer who no longer has a contract is to sell its Customer Base. This argument overlooks the fundamental dispute of material fact: that the 2005 Dealer Agreement was not properly terminated and the 2006 Dealer Agreement was not properly refused. If the jury finds in Plaintiff's favor on this issue, Plaintiff may be right that the only recovery available to Hemisphere is proceeds from the sale of its Customer Base. However, the parties have a lot of ground to cover between now and that ultimate jury determination.

Plaintiff argues that because Hemisphere declined the June 23, 2006 offer to extend its dealership for an additional eighteen months, that Hemisphere obviously "wanted out as a CSI dealer." (See Plaintiff's Memo at p. 9.) This leap of logic is demonstrably untrue. As shown by the voluminous and detailed information and the various Scott Lyon affidavits, on May 31, 2006 when Hemisphere signed the Asset Purchase Agreement with Microvisions II, and then notified its customers of the sale and began transferring its employees and operations over to Microvisions II, Hemisphere was irrevocably committed. Even if Hemisphere had wanted to continue as a dealer at that point – after the duplicitous conduct of Plaintiff – Hemisphere couldn't. Furthermore, Hemisphere was legally bound to Microvisions II as of May 31, 2006, conditioned only on Plaintiff's approval of Microvisions II as the buyer which Plaintiff had previously committed to do and as Plaintiff subsequently did do. Plaintiff will simply have to

17

wait until the jury verdict to find out if these circumstances are "patently and legally fictional," as it claims. (See Plaintiff's Memo at p.11.) These are, pure and simple, trial issues, not the stuff of summary judgment.

Finally, Plaintiff takes Brad Townsend to task for not independently valuing Hemisphere's Customer Base. This, even after Plaintiff goes to great pains to prove that Hemisphere achieved an average per-customer price from its sale to Microvisions II. The short answer to this critique is that Mr. Townsend accepted the sale price to Microvisions II as a rational mitigation of Hemisphere's damages, calculated a present value for the future stream of payments, and deducted that from his calculation of overall enterprise damages. Neither the Rule of Evidence nor the law of damages requires him to do anything else. Hemisphere is entitled to prove its case as it pleads it, not as Plaintiff would prefer. Plaintiff's other critiques of Mr. Townsend's other assumptions and processes are apparently based upon the extensive accounting background Mr. Mattlin takes pains to demonstrate in his July 24, 2007 Affidavit. Mr. Mattlin is not qualified to provide expert rebuttal testimony, and the MSJ-Dealer is not the proper context in which to resolve these types of disputes about expert technique, foundation, and conclusions.

**CONCLUSION**

There are seven independent, yet individually sufficient reasons why the MSJ-Dealer should be denied. Collectively, those reasons more than justify a summary denial of the MSJ-Dealer.

DATED this 29TH day of October, 2007.

        */s/ Russell C. Fericks*
RUSSELL C. FERICKS [Utah State Bar No. 3793]
RAMONA E. GARCIA [Utah State Bar No. 8923]
Attorney for Defendants
RICHARDS, BRANDT, MILLER & NELSON
Wells Fargo Center
299 S. Main Street, 15th Floor
P.O. Box 2465
Salt Lake City, Utah  84110-2465
Telephone:  (801) 531-2000
Fax No.:  (801) 532-5506
Russell-Fericks@rbmn.com
Ramona-Garcia@rbmn.com


JOHN C. SCOTT, #0029518
FAULKNER & TEPE, LLP
Attorney for Defendants
2200 Fourth & Vine Tower
Cincinnati, Ohio 45202
Telephone:  (513) 421-7500
Fax No.:   (513) 421-7502
jscott@faulkner-tepe.com

**CERTIFICATE OF SERVICE**

   I hereby certify that on October 29, 2007, I electronically filed the foregoing document with the Clerk of the Courts using the CM/ECF system which will send notification of such filing to John C. Scott, Faulkner & Tepe, LLP, 2200 Fourth & Vine Tower, Cincinnati, Ohio 45202, and Richard G. Meyer, John Kirk and and Angela M. Gates, Deters Benzinger & LaVelle, P.S.C., 207 Thomas More Parkway, Crestview Hills, KY 41017.

               */s/ Russell C. Fericks*

G:\EDSI\DOCS\11014\0030\K44102.WPD