**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | | |
|---|---|---|
| COMPUTEREASE SOFTWARE, INC. | : | CASE NO. 1:06-CV-247 |
| Plaintiff/Counterclaim Defendant | : | MAGISTRATE JUDGE TIMOTHY S. BLACK |
| -vs- | : | **MEMORANDUM OF POINTS AND AUTHORITIES SUPPORTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT – PLAINTIFF'S DISTRIBUTOR CLAIMS** |
| HEMISPHERE CORPORATION, et al., and HEMISPHERE MANAGEMENT, LLC | : | |
| Defendants/Counterclaim Plaintiffs | : | |

\* \* \* \* \* \* \*

Defendants Hemisphere Corporation, Inc., and Hemisphere Management, LLC, ("Hemisphere"), by and through their counsel of record, Russell C. Fericks of RICHARDS, BRANDT, MILLER & NELSON, pursuant to Rules 7 and 56 of the Federal Rules of Civil Procedure, submit this Memorandum of Points and Authorities Supporting Defendants' Motion for Summary Judgment – Plaintiff's Distributor Claims.

On April 25, 2007, Plaintiff filed a Motion for Leave to File Third Amended Complaint (Document 58). The Motion for Leave has never been submitted to the Court for decision, and the proposed Order (Document 58-2) remains unsigned in the file. However, the proposed Third Amended Complaint (¶ 4) alleges Hemisphere distributor duties as:

    a.    Provide adequate sales and technical support for dealers in regards to all CSI products;
    b.    Resolve all dealer calls without the direct involvement of CSI; and
    c.    Maintain sales quotas for its distributorship territory.

The Third Amended Complaint seeks distributor damages of $2,046,138.48 from Hemisphere for the following:

    a.    failing to provide adequate sales and technical support for dealers;
    b.    taking inadequate measures to acquaint and familiarize itself with new CSI products;
    c.    refusing and failing to handle dealer calls without the direct involvement of CSI;
    d.    failing to achieve and maintain sales quotas for its distributorship territory.

As shown below, there was never any specific distributor requirement for Hemisphere to "acquaint and familiarize itself with new CSI products" or "to achieve and maintain sales quota for [Hemisphere's] distributorship territory." With regard to dealer support obligations, while there is language in the Distribution Agreement to support that duty, on August 31, 2004 Hemisphere and Plaintiff entered into a novation transferring that responsibility from Hemisphere to Plaintiff in exchange for significant consideration. And, the novation has no reservation for whatever dealer support concerns or claims ComputerEase may have harbored up to that time.

## STATEMENT OF UNDISPUTED MATERIAL FACTS

    1.    On February 10, 1997, Plaintiff, ComputerEase Software, Inc., and Hemisphere entered into a Distribution Agreement for Hemisphere to operate as a distributor of ComputerEase products in the "exclusive territory which will be all states west of the Mississippi river (sic) . . . ." (Exhibit "A" to Plaintiff's Third Amended Complaint, copy at Tab 1).

2. Under the Distribution Agreement, Hemisphere was to provide support to retail level dealers of ComputerEase products and to end users; ComputerEase was not responsible to take calls from end users or dealers. The Distribution Agreement has no quota or product familiarization requirements.

3. Soon after the Distribution Agreement was signed, the parties began discussing possible changes to the distribution relationship. For instance, on June 4, 1997, principals for Hemisphere and Plaintiff met at the Fairfield Inn in Kentucky, to discuss a number of product, pricing and network issues. The meeting agenda (Depo. Exhibit 116 at Tab 2) sets no quota standards or product familiarity requirements.

4. Less than a year later, on April 20, 1998, the principals met in Lafayette, Indiana, for an additional assessment of distribution network issues, including territory assignments, pricing, and documentation. The minutes of the Lafayette meeting (Depo. Exhibit 105 at Tab 3) set no quota standards or product familiarity requirements.

5. By October of that same year, 1998, Hemisphere and Plaintiff once more evaluated and adjusted distributor responsibilities and pricing, as reflected in the October 4, 1998 letter from Hemisphere to Ed Roark and Bob Mattlin at ComputerEase. (Depo. Exhibit 119 at Tab 4)

6. Hemisphere's recitation in the October 4, 1998 letter of its already extensive involvement with publications, marketing, website development and dealer network

(see pages 1 and 2 of Depo. Exhibit 119 at Tab 4) has never been challenged. The October 4, 1998 letter acknowledges no quota standards or product familiarity requirements.

7. Time passed. People worked hard. The dealer network grew. Revenues increased. Based on Hemisphere's intimate understanding of the ComputerEase software products, a comprehensive product manual was published under the guidance of Scott Lyon, and Hemisphere appears as one of the copyright holders. (Depo. Exhibit 103 at Tab 5) As promised, Hemisphere set up a website for Plaintiff and its dealers, using domain names which Plaintiff is still clamoring to obtain ownership of. (Exhibit "E" to Plaintiff's First Amended Complaint, copy at Tab 6.) Hemisphere created state-of-the-art demonstration CDs of the ComputerEase products for use by dealers in marketing ComputerEase products, and Plaintiff acknowledged the "unbelievable" quality of these CDs and praised Hemisphere as a "great partner." (Depo. Exhibit 123 at Tab 7)

8. On November 22, 2002, Bob Mattlin, Plaintiff's owner, and John Meibers, President of Plaintiff's operations, proposed to "streamline both companies' operations and bring common sense to the dealer channel" by having "technical support and clerical responsibilities for dealers be consolidated under [ComputerEase] operations." [See CE's November 22, 2002 email correspondence at Tab 8.)

9. Plaintiff's November 22, 2002 overture to Hemisphere says nothing about a failure by Hemisphere to provide dealer support; it sets no quota standards or product

4

familiarity requirements; and it does not criticize Hemisphere for poor quota performance or lack of product knowledge.

10. To the contrary, Plaintiff ends its November 22, 2002 streamlining proposal with the telling caveat:

> **we want to come up with an additional incentive to keep you involved in the entire organization. You are a valued partner. Can't imagine the organization without your contribution.**

11. On December 16, 2002, Hemisphere responded to Plaintiff's proposal to consolidate technical support and clerical responsibilities. (Depo. Exhibit 78 at Tab 9) Hemisphere's response is an uncontested narrative history of the business up to that point, including Hemisphere's contributions to moving the ComputerEase programming into the Windows 95 environment and creating the very competitive concept of "Centers" which allow product users to organize business information in functional configurations for management utilization.

12. The December 16, 2002 memo confirms Hemisphere's investment in the dealers in its distribution territory, expresses concern that Plaintiff is "trying to take something away from me," but concludes that the parties should continue to "work as a team, as we have always done in the past."

13. Plaintiff's desire to streamline dealer support did not go away. It came up in 2003 and 2004, and on August 5, 2004, Mr. Lyon wrote to John Meibers and Bob Mattlin and suggested that Plaintiff should just buy out the distributorship and "take over all dealer related

5

sales and support issues" in order to allow Hemisphere to "focus on direct sales in [Hemisphere's dealer] territory, and for [CE] to make a very good return on [its] investment." (See Hemisphere letter at Tab 10) Plaintiff never challenged the summary of Hemisphere's contributions and expenses which are itemized in that letter.

14. Rather than Plaintiff agreeing to buy out Hemisphere's distributorship, the parties began exchanging drafts of a document through which dealer support responsibilities and direct dealer billing would be transferred from Hemisphere to Plaintiff in exchange for a monthly credit against Hemisphere's portion of commission payments. (See, e.g., August 26, 2004 email with draft of Dealer Billing and Support Agreement at Tab 11.)

15. On August 31, 2004, Plaintiff and Hemisphere finalized and signed the Dealer Billing and Support Agreement (Depo. Exhibit 40 at tab 12). It is explicitly "a modification of the Distribution Agreement Dated February 10, 1997, which was modified October 4, 1998." (The October 4, 1998 modification is the Hemisphere correspondence [Depo. Exhibit 119] at Tab 4.)

16. Other than shifting direct dealer support obligations to Plaintiff in exchange for a $2,500/month charge against Hemisphere's distributor commissions, the Dealer Billing and Support Agreement confirms the continued distribution relationship. It does not criticize Hemisphere's past dealer support, its quota record, or its product knowledge, nor does it set future quota requirements or product knowledge standards for Hemisphere.

6

17. Not only that, but simultaneously, on August 31, 2004, Plaintiff announced to the dealer network (Depo. Exhibit 125 at Tab 13) that the distribution change was made to "better serve our dealer network and to "streamline some of our dealer processes," and confirmed that: "For more than 8 years now, Hemisphere has done an expert job of managing orders and providing support for the ComputerEase West dealerships." CE's announcement goes on to confirm that "Hemisphere will continue to serve as Master Distributor for the west and will continue to be an invaluable and seemingly inexhaustible resource in the area of national marketing and sales . . . ."

## ARGUMENT

I. **PLAINTIFF CANNOT SHOW ANY GENUINE ISSUE OF MATERIAL FACT WHICH WOULD PRECLUDE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT.**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). If the moving party meets the initial burden of showing no genuine issue of material fact, the party opposing the motion must offer evidence, in admissible form, of specific facts sufficient to raise a genuine issue for trial. *See Holliman v. Allstate Ins. Co.*, 715 N.E.2d 532 (Ohio 1999); *see also Lexford Properties Mgmt. L.L.C. v. Lexford Properties Mgmt.*, 770 N.E.2d 603, 606 (Ohio App. 2001). In the present case, there is no

genuine issue of material fact regarding Hemisphere's alleged breaches of the Distribution Agreement. Accordingly, Hemisphere is entitled to summary judgment against Plaintiff's distribution claim as a matter of law.

      **A.**    **Acquaint and Familiarize with New ComputerEase Products**.

Plaintiff alleges that Hemisphere breached the Distribution Agreement by "taking inadequate measures to acquaint and familiarize itself with new [ComputerEase] products." *See* Third Amended Complaint, at ¶ 15. But this asserted contract requirement is without basis or foundation in any relevant documentation. Although Hemisphere is actually one of the most knowledgeable sellers, users and contributors to the ComputerEase software products, the Distribution Agreement (Tab 1) is silent as to any obligation for Hemisphere to become familiar with or acquainted with ComputerEase products. And none of the clarifications and adjustments of the distribution relationship subsequent to the Distribution Agreement set any specific familiarization or knowledge standards. (See, e.g., documents at Tabs 2, 3, 4, 8, 9, 12, and 13.) As such, Hemisphere cannot be in breach of the Distribution Agreement on the basis of a nonexistent contract requirement, and so the Court should grant Summary Judgment against CE's distributor claim.

      **B.**    **Sales Quotas for Distributorship Territory.**

Plaintiff alleges that Hemisphere breached the Distribution Agreement by "failing to achieve and maintain sales quotas for its distributorship territory." *See* Third Amended Complaint, at ¶ 15. But the Distribution Agreement does not provide any measurable,

quantitative requirement for sales quotas, and so there is no basis or foundation for this allegation. And none of the clarifications and adjustments of the distribution relationship subsequent to the Distribution Agreement set any specific quota standards. (See, e.g., documents at Tabs 2, 3, 4, 8, 9, 12 and 13.) As such, Hemisphere cannot be in breach of the Distribution Agreement for failing to meet a nonexistent contract requirement, and so the Court should grant Summary Judgment against CE's distributor claim.

### C. Novation of Sales and Technical Support for Dealers.

The undisputed record is that on August 31, 2004, the parties entered into a Dealer Billing and Support Agreement (Tab 12) which transferred responsibility for dealer support and call services to Plaintiff in exchange for monthly credits of $2,500 against Hemisphere's share of commission payments. There is no reservation in the Dealer Billing and Support Agreement of claims or concerns by Plaintiff for Hemisphere's failings in past dealer support activities. To the contrary, simultaneously with signing the Agreement, Plaintiff sent out public acknowledgment of Hemisphere's "8 years [of] an expert job of managing orders and providing support for the ComputerEase West dealerships." (Tab 13).

Under these circumstances, the Dealer Support and Billing Agreement constitutes a novation that extinguished Hemisphere's ongoing dealer support responsibilities and any claims Plaintiff may have had regarding Hemisphere's past performance of those support responsibilities under the February 10, 1997 Distributor Agreement. "A contract of novation is created where a previous valid obligation is extinguished by a new valid contract, accomplished

by substitution of parties or of the undertaking, with the consent of all the parties, and based on valid consideration." *Lexford*, *supra*, 770 N.E.2d at 607 (citations omitted). The Dealer Billing and Support Agreement is such a substitution of undertakings.  It is the result of a series of protracted negotiations between Plaintiff and Hemisphere, (see, e.g., Tabs 8, 9, 10, and 11).  In the Dealer Billing and Support Agreement, the parties consented to the consolidation of dealer support responsibilities to Plaintiff in exchange for $2,500.00 of Hemisphere's commissions each month.  And they end their new Agreement with the following summation under the heading:  Original Agreement:

> **Besides these changes, this agreement has no effect or changes in way the original dealer and distributor contracts between parties.**

This novation extinguished Hemisphere's potential liabilities under the February 10, 1997 Distribution Agreement for any shortfall, real or only imagined, in providing dealer support. "Where a second contract replaces the first contract by establishing new rights and obligations, the result is a contract of novation which extinguishes liability under the first contract in favor of the second."  *Kruppa v. All Souls Cemetery of Diocese of Youngstown*, 2002 WL 255506 (Feb. 22, 2002 Ohio App.).  Thus, Plaintiff cannot legally seek damages under the February 10, 1997 contract for Hemisphere's alleged failure to provide sales and technical support to dealers and to handle dealer calls because these issues were the subject of final, unreserved resolution on August 31, 2004.

**CONCLUSION**

In its Third Amended Complaint, Plaintiff claims damages of $2,046,138.48 for commissions paid to Hemisphere as a distributor from February 1997 through December 2005. Two of the three alleged duties of Hemisphere under the Distribution Agreement don't appear anywhere in the text of the Distribution Agreement or in any of the subsequent communications through which the parties clarified and adjusted the distribution relationship.  Because those alleged but unwritten requirements – i.e., the obligation of Hemisphere to become knowledgeable about ComputerEase software products, and the obligation of Plaintiff to meet some unspecified sales quota standards – have no support in the text of the Distribution Agreement, these two prongs of Plaintiff's distribution claim must fail.

The third prong of Plaintiff's distribution claim relates to the stated obligation in the Distribution Agreement for Hemisphere to provide dealer sales and support services.  To the extent that Hemisphere failed, in any way, to provide appropriate dealer support, on August 31, 2004, the parties entered into a novation in the form of the Dealer Billing and Support Agreement (Tab 12).  That novation substituted a new contractual relationship regarding dealer support and extinguished any dispute regarding Hemisphere's actual or alleged dealer support shortcomings.  Plaintiff not only failed to reserve any claims or causes of action regarding past dealer support provided by Hemisphere, but, to the contrary, simultaneously extolled Hemisphere's virtues to the dealer network and confirmed the ongoing distribution relationship

wherein Hemisphere was to "continue to be an invaluable and seemingly inexhaustible resource in the area of national marketing and sales . . . ."  (Tab 13)

Where the terms upon which a party bases its allegations of breach of contract do not exist in the contract or have been modified and extinguished by a subsequent agreement, there can be no recovery for that claiming party.  Under these circumstances, Summary Judgment is appropriate against Plaintiff's distribution claims.

DATED this 9th day of November, 2007.

       /s/ Russell C. Fericks
RUSSELL C. FERICKS [Utah State Bar No. 3793]
RAMONA E. GARCIA [Utah State Bar No. 8923]
Attorney for Defendants
RICHARDS, BRANDT, MILLER & NELSON
Wells Fargo Center, Fifteenth Floor
299 South Main Street
P.O. Box 2465
Salt Lake City, Utah  84110-2465
Telephone:  (801) 531-2000
Fax No.:  (801) 532-5506
Russell-Fericks@rbmn.com
Ramona-Garcia@rbmn.com

JOHN C. SCOTT, #0029518
FAULKNER & TEPE, LLP
Attorney for Defendants
2200 Fourth & Vine Tower
Cincinnati, Ohio 45202
Telephone:  (513) 421-7500
Fax No.:   (513) 421-7502
jscott@faulkner-tepe.com

12

## **CERTIFICATE OF SERVICE**

   I hereby certify that on November 9, 2007, I electronically filed the foregoing document with the Clerk of the Courts using the CM/ECF system which will send notification of such filing to Richard G. Meyer and Angela M. Gates, 207 Thomas More Parkway, Crestview Hills, KY 41017.

                 */s/ Russell C. Fericks*

G:\EDSI\DOCS\11014\0030\JV3627.WPD